## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| WURTH USA, INC., <br>                 Plaintiff, <br><br> v. <br><br> ANDREW SPETALNICK; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10, <br><br>                 Defendants. | Case No.: |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Wurth USA, Inc. ("Wurth"), by its undersigned counsel, Gordon Rees Scully Mansukhani, LLP hereby alleges against Defendant Andrew Spetalnick ("Spetalnick") as follows:

## PRELIMINARY STATEMENT

Defendant Spetalnick is a former employee of Wurth who violated his valid and enforceable Wurth Employment Agreement by commencing employment with Winzer Corporation ("Winzer"), Wurth's direct competitor, and selling Winzer's products to his former Wurth customers, within narrow-restricted temporal and geographic boundaries, located in the same territory as his former Wurth assigned territories shortly after his separation from Wurth. Winzer, who is not named as a defendant at this early juncture, for its part, is aware of Spetalnick's

1

iron-clad Employment Agreement and more specifically, his non-compete agreement, but has turned a blind eye in order to obtain an unfair competitive advantage and access to Spetalnick's knowledge of Wurth's confidential and trade secret information. Spetalnick continues to use Wurth's confidential and proprietary customer information in violation of both statute and the Wurth Employment Agreement.   Wurth has been forced to file this instant action to protect its confidential and proprietary information, and to enforce its valid and enforceable Employment Agreement that Spetalnick signed, but refuses to honor.

## PARTIES

1.     Plaintiff Wurth is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 93 Grant Street, Ramsey, New Jersey 07446.

2.     Defendant Spetalnick is an adult individual and was formerly employed by Plaintiff. Upon information and belief, Spetalnick is a resident of Florida, residing at 304 Polaris Drive, Satellite Beach, Florida 32937.

## JURISDICTION AND VENUE

3.     The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs of suit.

4.     This Court has jurisdiction over Defendant as he has done business within this State and in this District, and Plaintiff's claims in this action arose out

2

of those contacts. Additionally, Defendant knowingly and voluntarily executed an employment agreement with Plaintiff to conduct business within certain territories within this state.

5.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### The Business of Wurth and Winzer

6.     Established in 1969, Wurth is one of the leading suppliers in the United States, and around the world, of high-quality hardware products and services, including electrical and chemical. Specifically, Wurth specializes in the, sale, service and retail of automotive parts and chemicals, automotive hand tools, electrical supplies, cargo parts and chemicals, key machine, key blank, products. Wurth additionally has its own line of Automotive chemicals, known as the WURTH Green Line.

7.     Wurth maintains offices throughout the United States and has been expanding its presence for over 50 years.

8.     Wurth has multiple divisions within its company, including its Sales Division which is compiled of full time Sales Representatives, each assigned to a specific territory, in one or more states.

9.     Winzer, a direct competitor of Wurth, is also in the fasteners, electrical, chemical automotive, hand tool industrial supply and services industry.

Winzer has its presence throughout the nation, including in Florida, Georgia, Washington D.C., and Texas. According to Winzer's website, "Winzer is your single source supplier for all of your maintenance and repair supplies[1]." Winzer has been servicing the maintenance, repair, and operations industry since 1978. *Id.*

### Spetalnick's Employment at Wurth and His Employment Agreement

10.    Wurth hired Spetalnick as a Sales Representatives in Wurth's Sales Division team. In his position, Spetalnick was assigned to a specific territory and was responsible to solicit customers and maintain a class of accounts in his territory, pursuant to Wurth's customers' or accounts' orders for any automotive related parts, key machine related parts, industrial fasteners and industrial maintenance related products.

11.    Spetalnick maintained his position at Wurth for at least ten years.

12.    During that time, Spetalnick was exposed to, had access to, and utilized Wurth's Trade Secrets and Confidential Information such as Wurth's specialized products and equipment; identity of Customers including Customer Lists; sales pricing; specialized requirements of Wurth's customers; commission structures; Wurth's periodic financial performance; marketing, strategy, and sales reports; Wurth's software and computer programs; training materials and others. From the first date of employment through last day of employment, Spetalnick

---

[1] https://www.winzer.com/about-us

gained considerable knowledge and expertise due to such confidential material and training provided by Wurth.

13.   At the time of his separation, Spetalnick was employed by Wurth as a Sales Representative in the very original territories as initially assigned, and had built reputable steady relationships with customers.

14.   As a Sales Representative, Spetalnick worked closely with his counterparts in other regions to advance Wurth's overall business strategy.

15.   For example, Spetalnick and other Wurth representatives frequently attended conference calls with their superiors in which they discussed business developments within their respective territories. These calls included Conference Calls; Strategic Account Calls, in which superiors shared confidential information and statistics about Wurth's customers in their respective regions, as well as information regarding new customers that Wurth intended to pursue.

16.   As another example, Wurth's superiors routinely shared order records, internal organizational charts, leads spreadsheets, and other confidential documents related to Wurth's business strategy and its market intelligence with their Sales Representatives. Defendant frequently attended various in-person meetings in which such information was shared and discussed.

17.   Spetalnick also frequently consulted with colleagues in Wurth's various locations on a less formal basis.  Spetalnick, in fact, had spent most of his professional career with Wurth.

18.     As a consequence, Spetalnick was intimately familiar with Wurth's business strategy within his assigned territories, including but not limited to Wurth's customers and customer preferences and relationships; agreements and pricing; business initiatives; competitive advantages and disadvantages; and approaches to new markets and customers.

19.     Incident to and in consideration of his employment with Wurth, Spetalnick entered into an employment agreement with Wurth which is attached hereto as **Exhibit A** ("Spetalnick Employment Agreement").

20.     By entering into the Employment Agreement, Spetalnick agreed not to disclose or misuse confidential Wurth information. Specifically, he promised that he would not, at any time during or following his employment:

> …remove from Company's office any of the Company's Confidential Information, or any copies of such documents or information, without the written permission of Company's president.

*See* **Exh. A** § 5(a).

21.     Further, Spetalnick agreed not to use:

> …such confidential information for any non-Company purposes whatsoever or to divulge such information to any person other than Company or persons to whom Company has given its prior written consent.

*See* **Exh. A** § 5(b).

22.     In accepting his position with Wurth, Spetalnick specifically agreed to refrain from soliciting certain Wurth customers for a period of twelve (12) months after leaving Wurth's employ. His Employment Agreement provides:

> For a period of twelve (12) months after this Agreement has been terminated for any reason, with or without cause, or for a period of time equal to the length of the Employee's employment with Company if such tenure is less than twelve (12) months, Employee will not directly or indirectly solicit or sell any products which are the same or similar to the Company's products to those persons, companies, firms or corporations who are or were customers of Company within the six (6) months prior to the termination of this Agreement and for whose accounts Employee was responsible while in the employ of Company. Employee agrees not to solicit such accounts on behalf of himself or any other person, firm, company, or corporation. Employee further agrees not to solicit or induce or attempt to solicit or induce employees of the Company to terminate their employment with the Company, or cause employees to take any actions that might deprive the Company of any customer or of any present or prospective opportunity.

*See* **Exh. A** § 7(a).

23.     Additionally, Spetalnick as a condition of and in consideration of his employment, covenanted not to compete with Wurth and other Wurth Companies within a limited geographic radius for the first year after leaving Wurth. His Wurth Employment Agreement provides:

> For a period of twelve (12) months after this Agreement has been terminated for any reason, with or without cause, or for a period of time equal to the length of Employee's employment with Company if such tenure is less than twelve (12) months, Employee will not enter into or engage in the automotive parts business, the key

> machine business or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof as an individual or his own account or as a partner of joint venture, or as an employee, agent, independent contractor, or salesman for any person, firm association or corporation, or as an officer or director of a corporation which competes with the business of this Company within any territory to which Employee was assigned within six (6) months prior to the termination of this Agreement.

*See* **Exh. A** § 7(b).

24.      The reasonableness of the geographic and temporal scope of the non-competition and non-solicitation provisions in the Wurth Employment Agreement has been accepted and the restrictions enforced by state and federal courts.

25.      Spetalnick also agreed to the reasonableness of the geographic and temporal scope of the non-competition and non-solicitation provisions which provides:

> The parties have attempted to limit Employee's right to compete only to the extent necessary to protect Company from unfair competition. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties hereby agree that, if the scope of enforceability of the restrictive covenant is in any way disputed at any time, a court or other trier of fact may modify and enforce the covenant to the extent that it believes to be reasonable under the circumstances existing at that time.

*See* **Exh. A** § 7(c).

26.      Spetalnick initialed each page of his Wurth Employment Agreement.

27.     Spetalnick also signed his Wurth Employment Agreement.

28.     Furthermore, Spetalnick expressly agreed that in the event of a breach in the Wurth Employment Agreement pursuant to the misuse of trade secrets, confidential information, unauthorized employee communication, misuse of company name and non-disparagement and violation of the restrictive covenants, such breach will irreparably and continually damage Wurth, for which money damages may not be adequate. Spetalnick agreed that:

> In the event that he breaches or threatens to breach any of these covenants, Company shall be entitled to (1) a preliminary or permanent injunction without bond in order to prevent the continuation of such har; (2) the courts extension of the duration of the restrictive covenants for the period in which Employee was found to be in breach of those covenants; and (3) money damages for prior breaches insofar as they can be determined. Nothing in this Agreement, however, shall be construed to prohibit Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.
>
> As a portion of the above referenced money damages for the period of time during which Employee violates these covenants, Company shall be entitled to recover the amount of fees, compensation, or other remuneration earned by Employee as a result of any such breach.

*See* **Exh. A** § 8(a)-(b).

## Spetalnick's Employment History at Wurth

29.     Defendant Spetalnick was a Sales Representative in Wurth's Sales Division team.  Defendant Spetalnick was hired as a Sales Representative in

Wurth's Sales Division team and signed his Wurth Employment Agreement on March 3, 2008. **Exh. A**.

30.     Defendant Spetalnick was assigned to multiple territories in Georgia. Such territories include: Cobb County; Forsyth County; Fulton County; and Gwinnett County. Spetalnick had substantially the same duties and responsibilities as well as access and utilization of trade secrets and confidential information.

31.     Over the length of his employment with Wurth, Defendant Spetalnick built many relationships with customers and conquered massive expertise in the field and considerable knowledge of his assigned territories.

32.     After nearly 14 years at Wurth, Defendant Spetalnick left Wurth and began new employment with Winzer, a direct competitor of Wurth. Not only did Defendant Spetalnick become an employee of a direct competitor, he also remained in the very same territories in violation of his Wurth Employment Agreement. *See* **Exh.** A 7(b).

33.     During the onset of his new employment with Winzer, Defendant Spetalnick successfully solicited current and former customers of Wurth and successfully sold to them various supplies for the benefit of himself and Winzer, in direct violation of his Wurth Employment Agreement. *See* **Exh. A** § 7(a).

**Spetalnick's Development of Wurth's Goodwill and Customer
Relationships, and His Access to Wurth's Trade Secrets,
<u>Including Its Confidential Customer List</u>**

34.     In order to perform their duties, Spetalnick received training by Wurth and was given access to, and did in fact access, Wurth's confidential and proprietary information. Spetalnick also became intimately involved with many of Wurth's customers, accounts, and projects.

35.     Specifically, Spetalnick had access to and contributed to, the substantial customer list which Wurth has developed and which contains critical information for hundreds of prospective and actual customers in the Georgia region (i.e., customers seeking or potentially seeking, among others, industrial automotive supplies) (the "Wurth Customer List"). The Wurth Customer List, which has been developed over many years and at great expense, contains confidential and proprietary business information, such as but not limited to:

    a.    The names, addresses, and telephone numbers of each Wurth customer/account and prospective customer/account;

    b.    The name, title, telephone number, email address of the contact person for each Wurth customer/account and prospective customer/account;

    c.    The name, title, address, email address, telephone number of each decision maker in every department of each Wurth customer/account and many prospective customers/accounts;

    d.    The particular requirements and preferences of each customer/account and many prospective customers/accounts;

    e.    The pay rates or fees negotiated with each customer/account;

    f.    Credit information for each customer/account and many prospective customers/accounts; and

    g.    Other information pertinent to serving each customer/account and prospective customer/account.

36.     All Wurth Sales Representatives, including Spetalnick, had access to and utilized the Wurth Customer List.

37.     Additionally, over the years, Wurth has developed business relationships and goodwill with numerous Customers and accounts, and Wurth's Sales Representatives have access to those relationships all throughout the United States.

38.     Indeed, Wurth employed Spetalnick and compensated him specifically so that he would focus her efforts on developing those relationships, thereby contributing to the goodwill of the company.

39.     Wurth's Customer List is an extremely valuable asset and has been compiled only after spending significant time, efforts and resources. The information compiled in this list is generally not known or readily ascertainable and, as such, could easily be exploited by Wurth's competitors to allow them to gain a competitive advantage over Wurth.

40.     Spetalnick did not bring any customer relationships or contacts to Wurth; rather, he was provided a territory with built-in customer relationships, which he was required to develop and maintain as a Wurth employee.

41.     To protect the information contained in this list, as well as Wurth's Customer relationships, Wurth has adopted company-wide written policies restricting the disclosure or use of this information other than for official

company purposes, as evidenced in each of the Spetalnick's Employment Agreement. *See* **Exh. A** § 5(a)-(b).

42.     Additionally, Wurth requires each of its Sales Representatives to execute employment agreements and other documents with strict confidentiality provisions as a condition of employment. Further, Wurth restricts and limits who can access, use, and print such confidential information; and requires express written authorization for any non-Company purposes. *Id.*

43.     In addition, and as described above, Defendant Spetalnick had access to high-level confidential information concerning Wurth's business practices and strategies throughout their territories, by virtue of his role as Sales Representative.

44.     It goes without saying, the industry of which Wurth is in, is highly competitive. Thus, the type of confidential information that Spetalnick continues to have is critical to Wurth's business.

45.     Also critical are customer goodwill, which Wurth pays its Sales representatives to develop on behalf of Wurth so that when customers are in need for supplies and services, customers rely on Wurth for delivery and great customer service.

46.     Wurth spends hours and hours developing these relationships, largely through the activities of its Sales Division teams. Spetalnick has demonstrated the value of such relationships already by, upon information and

belief, actively reaching out to the customers with whom he worked with while at Wurth since separating from Wurth and beginning employment with Winzer.

47.     Spetalnick knew that Wurth specifically identified the information set forth above as confidential proprietary information; that such information has not been published or otherwise become a matter of public knowledge; and that he was not and continues to be obligated to use it, if at all, exclusively for the benefit of Wurth, but otherwise to keep it strictly confidential.

48.     Spetalnick knew that disclosing Wurth's trade secrets, confidential and proprietary information would operate to the detriment of Wurth and to the commercial advantage of its competitors, particularly a competitor like Winzer.

**Spetalnick's Separation from Wurth
to Join Wurth's Direct Competitor Winzer**

49.     In 2021, Defendant Spetalnick separated from Wurth to join Wurth's direct competitor, Winzer.  Specifically, Defendant Spetalnick terminated from Wurth effective March 31, 2021.

50.     Spetalnick began employment with Winzer shortly after his separation.

51.     Defendant Spetalnick was required to honor his multiple post-employment restrictive covenants. Upon new employment, one particular post-employment restrictive covenant in the Spetalnick Employment Agreement is to show prospective employers, Wurth's Employment Agreement. Specifically, the Employment Agreement provides:

> Employee agrees to promptly furnish any new employer with a copy of this Agreement prior to commencement of employment with that employer if less than two years after the termination of Employee's employment with Wurth.

*See* **Exh. A** § 11.

52.     Upon information and belief, Defendant Spetalnick is now employed as Winzer's Sales Representative in direct violation of his Wurth Employment Agreement. His new employment violates his Wurth Employment Agreement because, *inter alia*, the territories to which he is assigned by Winzer are within the territories of which he was assigned while employed by Wurth. Furthermore,

53.     As Winzer's Sales Representative in his assigned territories, Defendant Spetalnick is in a position to utilize and capitalize on his knowledge of Wurth's confidential and trade secret information regarding the Cobb County; Forsyth County; Fulton County; and Gwinnett County territories, which he obtained by virtue of his position as a Sales Representative for over 13 years – to unfairly compete against Wurth to its detriment and to the benefit of himself and Winzer.

54.     Immediately after Defendant Spetalnick gave notice of his resignation to Wurth and upon effective employment with Winzer, Defendant Spetalnick successfully solicited Wurth customers and sold to same.

55.     Upon information and belief, Winzer is directly competing with Wurth in Georgia, in the very same territory counties in which Defendant Spetalnick had significant insight and control over.

56.     Upon information and belief, Winzer also expected that Defendant Spetalnick would encourage other Wurth Sales Representatives to transition to the Winzer Company, in violation of their own Wurth Employment Agreements.

57.     Upon information and belief, Winzer hired Defendant Spetalnick not only to have him compete with Wurth in Georgia (which is, in itself, in violation of Defendant Spetalnick's Wurth Employment Agreement), but also in order to utilize the Wurth goodwill, and confidential and proprietary information Spetalnick learned while employed by Wurth to compete against it while expanding to other locations.

58.     Defendant Spetalnick has also continued to represent himself as Wurth employee on his LinkedIn profile, in an attempt to continue to trade upon the goodwill and customer relationships developed during his employment with Wurth, to Wurth's detriment and to his and Winzer's benefit.

**Cease-and-Desist Exchange and Thereafter**

59.     On or around May 17, 2021, Wurth sent a Cease-and-Desist letter to Defendant Spetalnick regarding his new Winzer employment and a reminder of his valid and enforceable restrictive covenants contained in his Wurth

Employment Agreement. Such Cease-and-Desist letter requested Spetalnick to honor his post-employment restrictive covenants. **Exhibit B**.

60.     Shortly thereafter, a Cease-and-Desist letter was sent to Winzer regarding Spetalnick's new employment with Winzer. The Cease-and-Desist letter notified Winzer that it has learned of the Former Employee's commenced employment with Winzer in direct violation of his post-employment restrictive covenants. In the correspondence, Wurth demanded that Winzer cease its interference with the former employee's post-employment obligations to Wurth, and demanded that the former employee abide by his Wurth Employment Agreement including Winzer's proof of receipt of the former employee's Wurth Employment Agreement. **Exhibit C**.

61.     On September, 1, 2021, Wurth through counsel, sent a Cease-and-Desist letter to Winzer and demanded Winzer among others, to immediately refrain from tortiously interfering with Wurth's agreements with its employees and that it cease and desist any efforts to solicit, engage or poach current or former Wurth employees to join Winzer. **Exhibit D**.

62.     On September 7, 2021, Winzer through counsel, responded to Wurth's Cease-and-Desist letter denying all allegations. **Exhibit E**.

63.     On or about November 9, 2021, Wurth filed a Verified Complaint in the District of New Jersey, Civil Action No. 2:21-cv-19877 against Spetalnick

and three other former Wurth employees who also violated their Employment Agreements with Wurth.

64.    On November 15, 2021, Wurth filed an Order to Show Cause seeking temporary and permanent relief as a result of Spetalnick's failure to abide by his Employment Agreement.

65.    Shortly thereafter, Spetalnick filed a motion to dismiss for lack of jurisdiction which was administratively dismissed as the parties engaged in settlement discussions from December 2021 through March 2022, to no avail.

66.    Wurth voluntarily dismissed its Complaint and filed the instant lawsuit where Spetalnick continues to compete with Wurth.

67.    To date, Spetalnick is in active employment with Winzer and Winzer failed to take action or to cooperate, thereby continuing to utilize Wurth's trade secrets and confidential and propriety information through Spetalnick; continuing to solicit Wurth's customers and accounts through Spetalnick; and continuing to usurp Wurth's business opportunities with loyal customers/accounts and prospective customers/accounts through Spetalnick.

68.    To date, Wurth's damages arising out of Spetalnick's unlawful behavior are significant.

69.    Winzer directly competes with Wurth by selling and providing, "[f]rom fastener products to facility maintenance[2]" among others, in the greater

---

[2] https://www.winzer.com/why-winzer

Georgia area, the very same business in which Wurth engages and the very same territories that Wurth serves.

70.     Winzer sought Spetalnick for hire to capitalize on his knowledge and relationship with Wurth's Customers, and his knowledge of Wurth's confidential and proprietary information.

71.     In other words, Winzer and Spetalnick want to take for themselves, and profit directly from, the very goodwill that Wurth paid Spetalnick to develop for it.

72.     Spetalnick has acted for the purpose of injuring Wurth and limiting marketplace competition.

73.     Upon information and belief, Winzer hired Spetalnick with full knowledge that he was bound by his Wurth Employment Agreement.

74.     Winzer has continued to employ Spetalnick with full knowledge that he was bound by his Wurth Employment Agreement. Winzer is familiar with the terms of the Wurth Employment Agreement prohibiting Spetalnick from disclosing, furnishing, or using confidential Wurth information; prohibiting him from working for a competitor of Wurth located within his previously assigned territories while being employed by Wurth; prohibiting him from soliciting Wurth's customers/accounts; and prohibiting him from disclosing or using on behalf of Wurth's confidential information.

75.   In commencing employment with Winzer, Spetalnick violated his Wurth Employment Agreement by accepting employment with a competitor of Wurth within the prohibited temporal and geographic scope.

76.   Upon information and belief, Spetalnick has further violated his Wurth Employment Agreement by, among other things, soliciting Wurth customers including those with whom he worked while employed by Wurth, in an attempt to have such customers cease doing business with Wurth and enter into supply, service and maintenance orders with Winzer. To date, collectively, Wurth has endured significant and substantial damages due to Defendant's unlawful behavior.

77.   Upon information and belief Winzer requires its employees to execute employment agreements with confidentiality provisions, restrictions on future employment with competitors and prohibitions on customers/accounts that are similar to the Wurth Employment Agreement which Spetalnick executed.

78.   In sum, Winzer itself acknowledges that the very same customers/accounts, business systems, operations, and customer lists that Wurth is now seeking to protect constitutes confidential information and trade secrets. In its response to Wurth's Cease-and-Cesist letter, Winzer acknowledged the importance of honoring post-employment restrictive covenants and noted the following:

> Winzer requires any new franchisee who is known to be
> subject to post-employment restrictive covenants to enter

> into a non-disclosure agreement ("NDA"), which
> requires the franchisee to represent that he or she (1)
> returned to their former employer all confidential and
> proprietary information; (2) has not and will not disclose
> any confidential or proprietary information to Winzer;
> and (3) will not be in violation of any agreement the
> employee has with their former employer by virtue of his
> or her work with Winzer.

**Exh**. E.

79.     By failing to adhere to its own policy, Winzer and Spetalnick's actions are intentional, willful and malicious.

80.     Spetalnick is causing Wurth irreparable harm and injury, including without limitation, the loss of customers; loss of employees; profits; business reputation and market share; the disclosure and misuse of trade secrets; disclosure and misuse of confidential and proprietary business information; and the loss of goodwill. These losses and injuries will continue if the Court does not enjoin Defendant's actions.

81.     Wurth has no adequate remedy at law.

## COUNT I — BREACH OF CONTRACT/ BREACH OF EMPLOYMENT AGREEMENT

82.     Wurth incorporates herein by reference the allegations of the preceding paragraphs.

83.     The Wurth Employment Agreement is a valid and enforceable contract.

84.     Defendant Spetalnick voluntarily entered into the Wurth Employment Agreement in consideration for his employment with Wurth and incident to that employment relationship.

85.     The post-employment restrictive covenant contained within the Wurth Employment Agreement is reasonable in temporal and geographic scope.

86.     By the actions described above, Defendant Spetalnick breached and continues to breach the express terms of the Wurth Employment Agreement that he signed as a condition of his employment with Wurth.

87.     By such actions, Defendant Spetalnick has caused and continues to cause Wurth immediate and irreparable harm for which Wurth has no adequate remedy at law.

88.     Defendant Spetalnick will continue such wrongful conduct unless enjoined.

**WHEREFORE,** WURTH respectfully requests that this Court:

a) Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from owning, managing, operating, controlling, being employed by, participating in or being connected in any manner with the ownership, management, operation or control of any competing automotive parts business, the key machine, or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof (including Winzer and its affiliates) within Defendant's assigned territories;

b) Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or performing services for, or attempting to solicit or perform services for, any customer of Wurth within his

assigned territories at any time within the twelve (12) months preceding the date of Defendant's separation;

c) Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or inducing or attempting to solicit or induce employees of Wurth to terminate their employment with Wurth, or cause employees to take any actions that might deprive Wurth of any customer or of any present or prospective business opportunity at any time within the twelve (12) months preceding the date of Defendant's separation;

d) Enjoin Defendant from otherwise violating his Wurth Employment Agreement;

e) Award damages against Defendant Spetalnick in an amount to be proved at trial;

f) Award Wurth its costs and interest; and

g) Grant such other and further relief as this Court deems equitable, just, and appropriate.

## COUNT II — TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS ADVANTAGE

89.    Wurth incorporates herein by reference the allegations of the preceding paragraphs.

90.    Wurth had existing and prospective economic and contractual relationships with its customers and accounts.

91.    Defendant intended to harm Wurth by interfering with its existing and prospective economic and contractual relationships and preventing such relationships from continuing or occurring.

92.    Defendant engaged in this tortious conduct in the absence of privilege, justification or excuse.

93.     By tortiously interfering with Wurth's economic or contractual existing or prospective customers and accounts, Defendant has caused and will continue to cause Wurth actual, immediate and irreparable harm for which Wurth has no adequate remedy at law and on account of which it has suffered, and will continue to suffer, actual damages.

94.     By tortiously interfering with Wurth's existing or prospective economic and contractual relationships with its customers and accounts, Defendant has acted intentionally, willfully, maliciously and with reckless indifference to Wurth's rights.

95.     Defendant will continue such wrongful conduct unless enjoined.

**WHEREFORE,** WURTH respectfully requests that this Court:

a) Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

b) Award damages against Defendant in an amount to be proved at trial;

c) Award punitive damages against Defendant;

d) Award Wurth its costs and interest; and

e) Grant such other and further relief as this Court deems equitable, just, and proper.

## COUNT III— UNJUST ENRICHMENT

96.     Wurth incorporates herein by reference the allegations of the preceding paragraphs.

97.     Wurth entered into a valid and enforceable Employment Agreement with Defendant in exchange for compensation, and reasonably expected Defendant to honor the Agreement terms and conditions.

98.     Defendant had notice and knowledge that Wurth expected Defendant to perform and honor his agreed-upon obligations under his Employment Agreement.

99.     Defendant was enriched by his unlawful behavior when he accepted employment by Winzer and received the associated compensation and benefits, and continue to get enriched, in violation of his post-employment restrictive covenant.

100.     The enrichment of Defendant was at the expense of Wurth, particularly because, Winzer obtained significant profits due to the unlawful solicitation of Wurth's current and former customers by Defendant and in turn compensated Defendant, and upon information and belief, continues to do same.

101.     It is against equity and good conscience to permit Defendant to retain the windfall associated with Wurth and receive compensation along with other benefits due to the successful unlawful solicitation of Wurth's customers for the benefit of themselves and Winzer.

102.     The benefits to Defendant, as described therein, were substantial and definitive.

103.    Wurth has been damaged as a direct and proximate result of Defendant's retention of benefits described herein.

104.    The retention of compensation and benefits by Defendant is unjust.

105.    Defendant will continue such wrongful conduct unless enjoined.

**WHEREFORE,** WURTH respectfully requests that this Court:

a)  Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

b)  Award damages against Defendant in an amount to be proved at trial;

c)  Award punitive damages against Defendant;

d)  Award Wurth its costs and interest; and

e)  Grant such other and further relief as this Court deems equitable, just, and proper.

## COUNT IV— QUANTUM MERUIT

106.    Wurth incorporates herein by reference the allegations of the preceding paragraphs.

107.    Wurth contracted with Defendant to perform employment duties along with honoring post-termination employment duties in exchange for compensation, and reasonably expected performance and honoring of post-employment duties in return.

108.    Defendant impliedly and expressly promised to perform employment duties and to honor her post-employment duties to Wurth.

109.     Defendant has not fulfilled the agreed-upon post-employment duties pursuant to the agreed-upon obligations, all while retaining compensation and benefits from Wurth in addition to compensation and benefits from a prohibited direct competitor, Winzer.

110.     It would be unjust, unfair, and inequitable for Defendant to retain the benefit gained from his failure to fulfill and honor his agreed-upon obligations under the parties' Employment Agreement.

111.     Wurth has been damaged by Defendant's failure to fulfill and honor his post-employment obligations.

112.     Defendant will continue such wrongful conduct unless enjoined.

**WHEREFORE,** WURTH respectfully requests that this Court:

a) Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

b) Award damages against Defendant in an amount to be proved at trial;

c) Award punitive damages against Defendant;

d) Award Wurth its costs and interest; and

e) Grant such other and further relief as this Court deems equitable, just, and proper.

## COUNT V — REQUEST FOR INJUNCTION

113.     Wurth incorporates herein by reference the allegations of the preceding paragraphs.

114.    Wurth's application for injunctive relief is authorized by Federal Rule of Civil Procedure 65.

115.    Defendant continues to work for a direct competitor, and continue to utilize Wurth's confidential and proprietary information and trade secrets to unlawfully solicit Wurth customers and sell to same.

116.    It is probable that Wurth will recover from Defendant after a trial on the merits because Defendant continues to work for a direct competitor and continue to utilize Wurth's confidential and proprietary information and trade secrets to unlawfully solicit Wurth customers and sell products to existing and former customers of Wurth and prospective customers.

117.    The harm that will result if the temporary injunction is not issued is irreparable because Defendant continues to work for a direct competitor and continue to use Wurth's confidential information and Wurth's trade secrets and continue to solicit and sell to Wurth's customers, which will cause irreparable and irreversible harm to the goodwill and reputation that Wurth has spent significant time and money establishing.

118.    Wurth has no adequate remedy at law because Defendant refuses to cease employment with Winzer, and cease utilizing Wurth's trade secrets, goodwill, and materials, and for monetary gain.

**WHEREFORE**, WURTH respectfully requests that the court grant it the following injunctive relief:

a) Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from owning, managing, operating, controlling, being employed by, participating in or being connected in any manner with the ownership, management, operation or control of any competing automotive parts business, the key machine, or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof (including Winzer and its affiliates) within the Defendant's assigned territories;

b) Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or performing services for, or attempting to solicit or perform services for, any customer of Wurth for which each of Defendant's assigned territories at any time within the twelve (12) months preceding the date of Defendant's separation;

c) Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or inducing or attempting to solicit or induce employees of Wurth to terminate their employment with Wurth, or cause employees to take any actions that might deprive Wurth of any customer or of any present or prospective business opportunity at any time within the twelve (12) months preceding the date of Defendant's separation;

d) Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

e) Enjoin Defendant, including without limitation any persons acting by, through, and for them, and anyone to whom he has already divulged Wurth's trade secrets, confidential or proprietary information, preliminarily during the pendency of this action and permanently thereafter, from endeavoring to learn, learning, retaining, disclosing, or using in any way Wurth's trade secrets, confidential or proprietary information;

This 25th day of March, 2022.

**GORDON REES SCULLY
MANSUKHANI, LLP**

*/s/ V. Phillip Hill IV*
Chad A. Shultz
Georgia Bar No. 644440
V. Phillip Hill IV
Georgia Bar No. 637841
55 Ivan Allen Jr. Blvd., NW, Suite 750
Atlanta, Georgia 30308
(404) 978-7302
cshultz@grsm.com
phill@grsm.com
*Counsel for Plaintiff Wurth USA, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

|  |  |
|---|---|
| WURTH USA, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>ANDREW SPETALNICK; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10,<br><br>                Defendants. | Case No.: |

## **VERIFICATION**

I, Aaron Brading, am the Chief Executive Officer ("CEO") of Wurth USA, Inc. ("Wurth"). I am authorized to make this Verification for and on behalf of Wurth.

I have read the foregoing Verified Complaint; the facts and matters set forth therein have been assembled from records of Wurth and were prepared with assistance of employees and representatives of Wurth, upon which I have relied in making this Verification. Based upon the matters which have been made known to me for purposes of making this Verification, I state that I am informed and believe that the matters stated in Wurth's complaint are true and correct. The grounds of my knowledge, information, and belief are derived from my position as CEO at Wurth, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Wurth's records and conversations with Wurth employees, and Wurth representatives' conversations with Defendant.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2022

## <u>CERTIFICATE OF COMPLIANCE WITH LR 7.1(D)</u>

Pursuant to LR 7.1(D), counsel for Plaintiff certifies that the **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** has been prepared with Times New Roman font (14 point) approved by the Court in LR 5.1(B).

This 25th day of March, 2022.

*/s/ V. Phillip Hill IV*
COUNSEL

# EXHIBIT A

## SALES REPRESENTATIVE EMPLOYMENT AGREEMENT
### (Current Employees-Agreement)

This Sales Representative Employment Agreement (the "Agreement") made this *3ʳᵈ* day of *March*, 200*8*, between WURTH USA, INC., a Delaware Corporation (the "Company"), and *Andy Spetalud* the "Employee").

In consideration of the promises and covenants contained in this Agreement, of continued employment and in addition to any other compensation to which Employee may otherwise be entitled,, the Company and the Employee hereby agree as follows:

1. **Employment.** The Company shall employ the Employee in a Sales Representative position, as described in this Agreement, for no specified time. Employment may be terminated by either party at any time, for any reason, or no reason, with or without notice.

2. **Employment Duties.** Employee agrees to faithfully perform the duties assigned by the Company to the best of his/her ability and to devote his/her full and undivided time to the transaction of the Company's business.

   a) **Territory.** Employee has the right to solicit business in the territory and class of accounts assigned as set forth in Appendix A attached to this Agreement. Territory, class of accounts, prices and/or types of products are subject to change at any time at the discretion of the Company.

   b) **Return of Equipment and Records on Termination.** On termination of this Agreement by either party, or upon request of the Company, all equipment and other Company property including sales manuals, price lists, customer account lists, promotional material, product catalogs, samples, sales kits, demonstration equipment, training materials, computer, fax machines, cellular telephone, and any security and/or access devices such as keys, e-tokens and/or key cards, shall be promptly returned to Company by Employee.

   c) **Policies.** In the absence of written authorization from the Company, prices, terms of sale, discounts and other policies including, but not limited to, those relating to human resources, ethics, discrimination and technology, established by the Company are to be followed explicitly.

   d) **Orders.** All orders shall be subject to approval, and no order shall by effective until accepted by the Company at its offices in Ramsey, New

Jersey; Orlando, Florida; Carol Stream, Illinois; Coppell, Texas; or Sparks, Nevada.  The Company may accept or reject any order, in whole or in part, and the shipment of any order shall be at the Company's discretion.

e)     **Outside Business Activity; Conflict of Interest**.  Employee shall not promote the business or products of any other company, or engage in any outside business activity or employment without the express written authorization of the President of the Company.  Employee shall not take, and shall not cause any employees to take, any actions that might deprive the Company of any customer or of any present or prospective business opportunity.

f)     **Records.**  All records or information of any kind given to Employee by the Company or compiled by Employee in connection with his/her employment are the Company's property and are to be delivered to the Company upon the Company's request.  All such records and information are to be strictly confidential in accordance with Section 5 of this Agreement.

g)     **Reports.**  Employee shall furnish Company promptly with copies of his/her correspondence with customers or others relating to the Company's business and also with daily and weekly reports and such special repots as may be requested.  Employee is to comply with any directions from the Company given directly or through authorized personnel, and to answer Company's letters or inquiries promptly.

h)     **Anything of Value from Customer.**  Cash, checks, merchandise or anything of value received by Employee from any customer of the Company are and shall remain the property of, and be immediately forwarded to the Company.

i)     **Other Writings**.  From time to time, Employees may be issued directives, guidelines, manuals and other written materials which set forth instructions, terms, and conditions, governing employment.  Employee hereby agrees to be bound by and to follow said directives, guidelines, manuals and materials.  However, nothing contained therein is intended to supersede this Agreement.  To the extent anything contained therein might be deemed inconsistent with or at variance with the terms of this Agreement, then this Agreement shall be controlling.

j)     **Other Agreements.**  Employee acknowledges and agrees that Employee is free of employment restrictions from former employers and that Employee is not a party to any agreement, the terms of which are inconsistent with the terms of this Agreement or which would be breached by Employee's services to Wurth.

3.     <u>Expenses</u>.  With the prior approval of a Manager, Employee is authorized to incur reasonable expenses for promoting the business of the Company, provided such

3/3/08 a 2

expenses are within the scope of the Company's general expense policies, which may be changed by the Company from time to time.  The Company shall reimburse Employee for all such expenses upon the presentation by Employee to the Company from time to time (but no less frequently than monthly) of an itemized and documented accounting of such expenditures in accordance with applicable law.

4.    **Benefits**.  Employee shall be entitled to participate in benefit plans provided by Company and its employees for which Employee may qualify, in accordance with and subject to the terms of such benefit plans.

5.    **Use Of Trade Secrets And Confidential Information**.

a)    Employee acknowledges that (1) Company's products are highly specialized items (2) the identity and particular needs of Company's customers are not generally known in the industry; (3) Company has a proprietary interest in the identity of its customers and customers lists; and (4) documents and information regarding Company's methods of production, sales pricing, costs, the specialized requirements of Company's customers, commission structures, Wurth's periodic financial, performance, marketing and sales reports, Wurth's proprietary Company software, computer programs and training materials are highly confidential and constitute trade secrets (hereinafter "Confidential Information").  Under no circumstances shall Employee remove from Company's office any of the Company's Confidential Information, or any copies of such documents or information, without the written permission of Company's President.

b)    During the term of this Agreement, Employee will have access to and become familiar with various Confidential Information of Company, including but not limited to the documents and information specifically referred to in paragraph (a) above.  Employee acknowledges that such Confidential Information is owned and shall continue to be owned solely by Company.  During the term of his/her employment and after such employment terminates, for any reason, Employee agrees not to use such Confidential Information for any non-Company purposes whatsoever or to divulge such information to any person other than Company or persons to whom Company has given its prior written consent.

6.    **Unauthorized Employee Communications, Use of Company Name and Non-Disparagement**.

3

Employee will not, without the express written authorization of the Company's President, make any public statements or communications, including those through the print, broadcast or electronic media, (including on the internet, blogs, websites or chat rooms), regarding the Company, its customers, management team, products or compensation structure, except where expressly required by applicable law.   Employee agrees that he/she will not use Wurth's or any customer's name, logo, trademark or copyrighted materials for purposes not authorized by and for the benefit of Wurth.   Employee agrees that he/she will not denigrate, disparage or defame Wurth or its customers and will not make any negative remarks about Wurth or its customers during or after the term of Employee's employment in any print, broadcast, electronic media or other public or private forum or to any third parties.

7.   **Restrictive Covenants**.

a)   For a period of twelve (12) months after this Agreement has been terminated for any reason, with or without cause, or for a period of time equal to the length of Employee's employment with Company if such tenure is less than twelve (12) months, Employee will not directly or indirectly solicit or sell any products which are the same or similar to the Company's products to those persons, companies, firms, or corporations who are or were customers of Company within the six (6) months prior to the termination of this Agreement and for whose accounts Employee was responsible while in the employ of Company.   Employee agrees not to solicit such accounts on behalf of himself/herself or any other person, firm, company, or corporation.   Employee further agrees not to solicit or induce or attempt to solicit or induce employees of the Company to terminate their employment with the Company, or cause employees to take any actions that might deprive the Company of any customer or of any present or prospective business opportunity.

b)   For a period of twelve (12) months after this Agreement has been terminated for any reason, with or without cause, or for a period of time equal to the length of Employee's employment with Company if such tenure is less than twelve (12) months, Employee will not enter into or engage in the automotive parts business, the key machine or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof either as an individual or his/her own account or as a partner of joint venture, or as an employee, agent,

independent contractor, or salesman for any person, firm, association or corporation, or as an officer or director of a corporation which competes with the business of this Company within any territory to which Employee was assigned within six (6) months prior to the termination of this Agreement.

c) The parties have attempted to limit Employee's right to compete only to the extent necessary to protect Company from unfair competition. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties hereby agree that, if the scope of enforceability of the restrictive covenant is in any way disputed at any time, a court or other trier of fact may modify and enforce the covenant to the extent that it believes to be reasonable under the circumstances existing at that time.

d) Employee further acknowledges that (1) in the event his/her employment with Company terminates for any reason, he/she will be able to earn a livelihood without violating the foregoing restrictions and (2) that his/her ability to earn a livelihood without violating such restrictions is a material condition to his/her employment with Company.

8. **Remedies**. Employee acknowledges (1) that compliance with Sections 5, 6 and 7 of this Agreement is necessary to protect the business and good will of Company (2) that a breach of those sections will irreparably and continually damage Company, for which money damages may not be adequate.

a) Consequently, Employee agrees that, in the event that he/she breaches or threatens to breach any of these covenants, Company shall be entitled to (1) a preliminary or permanent injunction without bond in order to prevent the continuation of such harm; (2) the court's extension of the duration of the restrictive covenants for the period in which Employee was found to be in breach of those covenants; and (3) money damages for prior breaches insofar as they can be determined. Nothing in this Agreement, however, shall be construed to prohibit Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

b) As a portion of the above referenced money damages for the period of time during which Employee violates these covenants, Company shall be entitled to recover the amount of fees, compensation, or other remuneration earned by Employee as a result of any such breach.

9. **Upon Termination of Agreement**. Upon termination of this Agreement, both parties shall be released and relieved of all further liability hereunder except that:

a)   Employee will immediately return all of the property referred to in Sections 2(b) and (f) and 9(b) of this Agreement, within seven (7) days after termination.

b)   The Company will pay Employee any balance of compensation and/or commissions; provided, however, that, pursuant to applicable law,  the Company shall have first received any and all Company property, including without limitation, the property referred to in Sections 2(b) and (f) of this Agreement, and a reasonable amount of time has passed to process returns and credits resulting from the Employee's activities.

c)   Employee shall remain bound by the provisions of Sections 5 through 9 of this Agreement.

10.   **Assignment; Successors.**  The Employee shall not have the right to assign any rights or obligations under this Agreement without the prior written approval of the Company.  This Agreement, including all restrictive covenants, shall inure to the benefit of and be binding upon the heirs, representatives, successors (by merger, acquisition, or otherwise) and assigns of the parties to it.

11.   **Future Employers.**  Employee agrees to promptly furnish any new employer with a copy of this Agreement prior to commencement of employment with that employer if less than two years after the termination of Employee's employment with Wurth.

12.   **Severability.**  If any provisions, section, or subsection of this Agreement is adjudged by any court to be void or unenforceable in whole or in part, this adjudication shall not affect the validity of the remainder of the Agreement, including any other provision, section or subsection.  Each provision, section and subsection of this Agreement is separable from every other provision, section, and subsection, and constitutes a separate and distinct covenant.

13.   **Complete Understanding.**  Except as specifically provided herein, this Agreement replaces any and all other Agreements, whether oral or written, and is the sole Agreement between the parties.

6

14. **Modification**.   No alternation or modification to any of the provisions of this Agreement shall be valid unless made in writing and signed by the Employee and an authorized representative of the Company.

15. **Governing Law.**  This agreement shall be subject to and governed by the substantive laws of the State of New Jersey.

WURTH, USA INC.

Date: 3-3-08                                         By: _____

Title: DISTRIG MANAGER

Date: 3/3/08                                          _____
                                                      Employee

                                                      Title: Sale + Service

058454, 000001, 501635017.1

12/8/07

# WURTH USA, INC.
## SALES REPRESENTATIVE
## EMPLOYMENT AGREEMENT
## APPENDIX A

**TERRITORY (Please list the area of responsibility by County):**

ANDY SPETALNICK

Cobb
Forsyth
Fulton
Gwinnett

_Andrew M Spetalnick_
Employee's Signature

_3/3/08_
Date

**Please note this Appendix A is subject to change over time.  You will receive a revised territory Appendix to reflect your current responsibilities on a periodic basis.**
058448, 000001, 501640240.1

# EXHIBIT B

Maria Burghardt
Corporate Counsel

**WÜRTH ⬛ GROUP**
Wurth Group of North America Inc.
93 Grant Street Ramsey, NJ 07446

T +1 551 217 2070
F +1 201 661 9620
maria.burghardt@wugona.com

<u>Via Priority Mail</u>
Andy Spetalnick
304 Polaris Drive
Satellite Beach, FL 32937

May 17, 2021

### CEASE AND DESIST

Dear Andy Spetalnick,

I serve as in-house counsel to Wurth USA, Inc. ("Wurth"). As you are aware, you are currently subject to the restrictions set forth in that Sales Representative Employment Agreement ("Agreement") by and between you and Wurth, dated March 3, 2008. It has come to our attention that you have violated the terms of this Agreement. Allow this letter to serve as official notice of your violations. To be more specific and for purposes of clarity, <u>Section 7</u>, Restrictive Covenants, of the Agreement states:

> Employee will not directly or indirectly solicit or sell any products which are the same or similar to the Company's products to those persons, companies, firms, or corporations who are or were customers of Company…

Additionally, for a period of twelve (12) months since your termination with the company, you have agreed not to enter into or engage in the automotive parts business, the key machine, or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof. However, Wurth has been advised that you are currently employed with Winzer Corporation a direct violation of the Agreement.  As you are aware, the restrictions in the Agreement, not limited to the above, survive your resignation. Moreover, you have, in writing, agreed to furnish your new employer with a copy of this Agreement (refer to Section 11).

At this time, Wurth requires the following:
1) You must immediately cease and desist contacting any customers in accordance with the terms of the Agreement.
2) You must immediately provide proof that you current employer has received a copy of your Agreement and has agreed to abide by the terms of the Agreement.
3) Any purchase orders entered into with customers in common with Wurth USA must immediately be terminated or the proceeds therefrom remitted to Wurth.

Wurth hereby demands you to the honor the terms of your Agreement so that the following legal remedies are not necessary.

<u>Section 8</u>, Remedies:

In the event that he/she breaches or threatens to breach any of these covenants, Company shall be entitled to (1) a preliminary or permanent injunction without such bond in order to prevent the continuation of such harm; (2) the court's extension of the duration of the restrictive covenants; and (3) money damages for prior breaches insofar as they can be determined.

Your anticipated cooperation is demanded no later than Friday, May 21, 2021.  In the event I do not hear from you and your current employer by that date, Wurth USA will immediately take action to enforce its rights and remedies.  Please be guided accordingly.

Best,

*Maria Burghardt, Esq.*

Cc:

Winzer Corporation
4023 Northwest 87th Avenue
Cooper City, FL 33024

# EXHIBIT C

**WÜRTH ▮ GROUP**

Wurth Group of North America Inc.
93 Grant Street Ramsey, NJ 07446

Maria Burghardt
Corporate Counsel
T +1 551 217 2070
F +1 201 661 9620
maria.burghardt@wugona.com

<u>Via Priority Mail</u>

Winzer Corporation
4023 Northwest 87th Avenue
Cooper City, FL 33024

### <u>CEASE AND DESIST- 2nd NOTICE</u>

To whom this may concern,

I serve as in-house counsel to Wurth USA, Inc. ("Wurth"). It has come to my attention that you currently employ Andy Spetalnick, another former employee of Wurth (a letter was previously sent regarding Michele Thompson). Similarly, and as you should be aware, Andy is currently subject to the restrictions set forth in that Sales Representative Employment Agreement ("Agreement") by and between himself and Wurth, dated March 3, 2008. Be advised that Andy has violated the terms of this Agreement. Allow this letter to serve as Wurth's 2nd official notice of his violations. Allow me to reiterate the terms of his Agreement, particularly, <u>Section 7</u>, Restrictive Covenants, of the Agreement states:

> Employee will not directly or indirectly solicit or sell any products which are the same or similar to the Company's products to those persons, companies, firms, or corporations who are or were customers of Company…

<u>Section 5</u>, Use of Trade Secrets and Confidential Information, states:

> Employee will have access to and become familiar with various Confidential Information of Company… Employee acknowledges that such Confidential Information is owned and shall continue to be owned solely by Company. During the term of his/her employment and after such employment terminates, for any reason, Employee agrees not to us such Confidential Information for any non-Company purposes whatsoever or to divulge such information to any person other than Company or persons to whom Company has given its prior written consent.

Additionally, for a period of twelve (12) months since Andy's termination with Wurth, he has agreed not to enter into or engage in the automotive parts business, the key machine, or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof. As such, Andy's employment with you a direct violation of the Agreement and the restrictions in the Agreement, not limited to the above, survive her resignation. Moreover, Andy has, in writing, agreed to furnish you, as his new employer, with a copy of this Agreement (refer to <u>Section 11</u>, Future Employers).

Be further advised that Wurth has sent formal notice to Andy, like Michele, as of this date and requires the following from him:

1) Immediately cease and desist contacting any customers in accordance with the terms of the Agreement.
2) Immediately provide proof that you, his current employer, have received a copy of the Agreement and are aware its restrictions.
3) Any purchase orders entered into with customers in common with Wurth must immediately be terminated or the proceeds therefrom remitted to Wurth.

Should Wurth obtain knowledge that violations continue, the following legal remedies will be pursued.

<u>Section 8</u>, Remedies:

In the event that he/she breaches or threatens to breach any of these covenants, Company shall be entitled to (1) a preliminary or permanent injunction without such bond in order to prevent the continuation of such harm; (2) the court's extension of the duration of the restrictive covenants; and (3) money damages for prior breaches insofar as they can be determined.

Wurth demands your cooperation in this matter requests a formal response to this notice within three (3) days of receipt.  In the event I do not hear from you by then, Wurth will immediately take action to enforce its rights and remedies under the Agreement.  Please be guided accordingly.

Best,

*Maria Burghardt, Esq.*

# EXHIBIT D

PETER G. SIACHOS
PSIACHOS@GRSM.COM
DIRECT DIAL: (973) 549-2532

ADMITTED IN: NY, NJ, PA, SC & DC



ATTORNEYS AT LAW
18 COLUMBIA TURNPIKE, SUITE 220
FLORHAM PARK, NJ 07963
WWW.GRSM.COM
(973) 549-2500

September 1, 2021

**BY FEDEX AND EMAIL**

John C.C. Sanders Jr., Esq.
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201

> Re:   **Wurth Group of North America, Inc.**
>       **CEASE AND DESIST LETTER**

Dear Mr. Sanders:

This firm represents Wurth USA, Inc. ("Wurth") in connection with several former employees' ongoing and flagrant breaches of their respective Sales Representative Employment Agreements. Because Wurth is now represented by counsel, we demand that you refrain from contacting Wurth, or any of its employees, representatives or agents, and direct all future communications to my attention.

We are in receipt of your August 6, 2021 letter which purports to "immediately remind the franchisees identified in your correspondence of their obligations to comply with any restrictive covenants that they are subject to." These words were nothing but empty promises. Wurth is aware of at least six (6) former employees that operate as Winzer franchisees and continue to engage and solicit sales and business from their former Wurth customers in violation of their respective Sales Representative Employment Agreement, including, but not limited to Michelle Thompson, Andy Spetalnick, Bradford Dunbar, James Matlock, Kevin DiMisa, and Charlie Trombley. Worse, Wurth is aware of additional Wurth employees actively being poached to leave Wurth, and join Winzer. Please be reminded that the Sales Representative Employment Agreements not only permit Wurth to recover compensation or fees paid to or earned by the former employee as a result of such breach, but also attorneys' fees.

Initially, all six of the above referenced former Wurth employees signed an iron-clad Employment Agreement prohibiting them from entering into, or engaging "any automotive parts business…**the industrial fastener and industrial maintenance products business**…as an individual, as a partner of joint venture, or as an employee, agent, independent contractor, or salesman for any person, firm, association, or corporation" for a period of 12 months post-Wurth termination. Winzer clearly falls within this restrictive covenant/non-compete provision as it sells fasteners and industrial maintenance products.[1] Despite this, Winzer has hired, and continues to

---

[1] https://www.winzer.com/about-us

John C.C. Sanders Jr., Esq.
September 1, 2021
Page 2

hire, not to mention poach former Wurth employees with monetary incentives in contravention of their Employment Agreements.  By way of example:



**We write to demand that Winzer <u>immediately</u> refrain from tortiously interfering with Wurth's agreements with its employees, and that it cease and desist any efforts to solicit, engage, or poach current or former Wurth employees to join Winzer.**

Moreover, Wurth continues to suffer on-going, irreparable harm as several of its former employees continue to solicit sales from their former Wurth customers.  For example, and by no means is this an exhaustive list:

- Andy Spetalnick continues to solicit at least two of his former Wurth customers: Mike Erdman's Toyota and Boniface Kia;

- James Matlock continues to solicit Sulphur Springs CDJR – one of his former Wurth customers;

- Michelle Thompson continues to solicit, engage, and sell product to Maxim Crane, one of her former Wurth customers; and

- Bradford Dunbar continues to sell brake cleaner drums – the exact product he sold for Wurth – to one of his former Wurth customers (a Toyota dealership), while holding himself out as a "Winzer" representative.

**We write to demand that these Winzer franchisees, and former Wurth employees, <u>immediately</u> cease and forever desist from engaging in these and similar unlawful activities.**

Wurth has remained patient and has attempted to let the facts play out before sending this letter.  However, its patience has run out and the facts clearly show clear contractual and tort liability for Winzer and the poached employees.   Wurth has instructed us to pursue any and all rights and remedies available to it, including seeking injunctive relief against Winzer and its

John C.C. Sanders Jr., Esq.
September 1, 2021
Page 3

franchisees/former Wurth employees for their ongoing violations of their Sales Representative Employment Agreements.   Unless Wurth receives written assurances **by 5:00 p.m. on Tuesday, September 7, 2021** that Winzer will (1) enforce and require Wurth's former employees to abide by their respective Sales Representative Employment Agreements; and (2) require Wurth's former employees to sign statements acknowledging their agreements, and agreeing not to solicit Wurth customers, or poach Wurth employees for the duration of their Restrictive Covenant, we will proceed with appropriate judicial intervention.

This letter shall serve as your final warning that Winzer cease and desist from tortiously interfering with Wurth's agreements with its employees, that it cease and desist from unlawfully competing with Wurth, and that it cease and desist from causing Wurth employees to violate the valid and enforceable Sales Representative Employment Agreements.

The foregoing is made without prejudice to Wurth's rights and remedies and nothing contained herein shall be deemed to be a waiver of any of Wurth's rights at law or in equity; all such rights being expressly reserved.

Very truly yours,

GORDON REES SCULLY MANSUKHANI LLP

PETER G. SIACHOS

(via Certified Mail Mail)
cc:     Andy Spetalnick
        Bradford Dunbar
        Charlie Trombley
        James (Eddie) Matlock
        Kevin DiMisa
        Christopher R. Fritz, Esq

# EXHIBIT E



North America   Europe   Asia

2121 N. Pearl Street
Suite 900
Dallas, TX 75201
T +1 214 453 6500
F +1 214 453 6400

**JOHN C.C. SANDERS, JR.**
Partner
214-453-6462
jsanders@winston.com

September 7, 2021

**VIA EMAIL**

Peter G. Siachos
Gordon Rees Scully Mansukhani, LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07963
psiachos@GRSM.com

**Re:**      Response to Cease and Desist Letter

Dear Mr. Siachos:

I write on behalf of Winzer Corporation ("Winzer") in response to your September 1, 2021 letter.  As I previously stated, Winzer takes any allegations of a franchisee's violation of lawful obligations owed to former employers seriously.  Your letter asserts that Winzer is insincere in making that statement, that Winzer has done nothing to ensure that its franchisees honor lawful obligations owed to Wurth USA, Inc. ("Wurth"), and that Winzer has tortiously interfered with Wurth's agreements with its former employees. Wurth is wrong on all scores.

First, Winzer has taken active steps to ensure that its franchisees honor their lawful obligations owed to former employers.  Winzer requires any new franchisee who is known to be subject to post-employment restrictive covenants to enter into a non-disclosure agreement ("NDA"), which requires the franchisee to represent that he or she (1) returned to their former employer all confidential and proprietary information; (2) has not and will not disclose any confidential or proprietary information to Winzer; and (3) will not be in violation of any agreement the employee has with their former employer by virtue of his or her work with Winzer.  The NDA further states that Winzer has the right to terminate the franchisee agreement if any representations in the NDA prove to be false.  These representations are not—as you suggest—"empty promises;" they are material representations that Winzer relied upon before deciding to work with these franchisees.  Considering the limited authority Winzer has to control the activities of its franchisees—who operate as independent contractors, not employees—Winzer's NDA is a reasonable, good faith effort to ensure that its franchisees are not violating any agreements owed to their former employers.

More specifically concerning Wurth's allegations, after receiving communications from Wurth expressing concerns about certain franchisees' conduct, Winzer reached out to each franchisee reminding them of their obligations.  This reminder was done orally with each franchisee, followed up by written correspondence via email.



September 7, 2021
Page 2

Second, Winzer is not poaching Wurth's employees.   While you noted that several former Wurth employees have decided to pursue a business opportunity with Winzer, you did not identify any actions Winzer took to actively solicit or "poach" these individuals.  In fact, from the volume of interest that Winzer has seen recently from Wurth employees, it appears that many Wurth employees are simply unhappy with their employment at Wurth.  Winzer considers all franchisee applicants under the same criteria and has not singled out Wurth employees as targets for recruitment.  Let me also say that to the extent your letter seeks an agreement from Winzer to not consider Wurth employees who apply to become Winzer franchisees, Winzer may not do so as such an agreement would have serious antitrust implications.

Third, to the extent that Wurth believes that Wurth employees should be barred from associating with Winzer in any capacity due to their non-compete obligations, I have grave concerns about the enforceability of the sweeping non-competition provision Wurth is attempting to enforce.  That provision purports to prohibit Wurth's former employees from "enter[ing] into or engag[ing] in the automotive parts business, the key machine or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof."  This provision—which purports to completely box out an employee from at least four separate industries—would prevent the individual from engaging in countless occupations that would not require the use of any specialized knowledge developed through the employee's employment with Wurth, including, for example, work as a tire salesman, a clerk at an auto parts store, or even a janitor at a key-cutting shop.  And the provision goes so far as to prohibit former employees from entering into independent contractor relationships in any way in such industries like the franchisee relationship at issue here.  In short, the non-competition provision is patently over-broad and unenforceable.

In sum, while Winzer denies Wurth's allegations and believes that Wurth's sweeping non-competition provisions are unenforceable, Winzer remains committed to ensuring that its franchisees abide by the terms of any lawful agreements between the franchisee and his or her former employer.  To that end, Winzer is willing to discuss additional reasonable measures to ensure that its franchisees are not in violation of any lawful covenants owed to Wurth.

I look forward to hearing from you.


Sincerely,

John Sanders