UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WURTH USA, INC.,

      Plaintiff,

  v.

ANDREW SPETALNICK; JOHN
DOES 1–10; JANE DOES 1–10; DOE
PARTNERSHIPS 1–10; DOE
CORPORATIONS 1–10; AND DOE
ENTITIES 1–10,

      Defendants.

CIVIL ACTION NO.
1:22-CV-01204-JPB

## ORDER

This matter comes before the Court on Andrew Spetalnick's ("Defendant")
Motion to Dismiss for Failure to State a Claim [Doc. 8].  This Court finds as
follows:

## BACKGROUND

This case arises from the alleged breach of the restrictive covenants of an
employment agreement.  Defendant is a resident of Florida and a former employee
of Wurth USA, Inc. ("Plaintiff").  [Doc. 1, p. 2].  Plaintiff is a leading supplier of
hardware products and services and operates throughout the United States.  Id. at 3.
Plaintiff is incorporated in Delaware with its principal place of business in New
Jersey.  Id. at 2.  Winzer Corporation—which is not a party to this lawsuit—is

Defendant's current employer.  Id. at 1.  Winzer operates in the fasteners,

electrical, chemical automotive and industrial supply and services industries and is

one of Plaintiff's direct competitors.  Id. at 3.

On March 3, 2008, Defendant was hired as a Sales Representative with

Plaintiff's Sales Division team and signed a Sales Representative Employment

Agreement (the "Employment Agreement" or the "Agreement").[1]  Id. at 9–10.  The

Employment Agreement contains restrictive covenants that are at issue here.

Section 7(a) of the Agreement provides the following (the "Non-Solicitation

Provision"):

> For a period of twelve (12) months after this Agreement has been
> terminated for any reason, with or without cause, or for a period of
> time equal to the length of Employee's employment with Company if
> such tenure is less than twelve (12) months, Employee will not
> directly or indirectly solicit or sell any products which are the same or
> similar to the Company's products to those persons, companies, firms,
> or corporations who are or were customers of Company within the six
> (6) months prior to the termination of this Agreement and for whose
> accounts Employee was responsible while in the employ of Company.
> Employee agrees not to solicit such accounts on behalf of
> himself/herself or any other person, firm, company, or corporation.
> Employee further agrees not to solicit or induce or attempt to solicit or
> induce employees of the Company to terminate their employment
> with the Company, or cause employees to take any actions that might
> deprive the Company of any customer or of any present or prospective
> business opportunity.

---

[1] Plaintiff attached the Employment Agreement as an exhibit to the Complaint.  See [Doc.
1, pp. 35–42].

Id. at 38.  Section 7(b) is as follows (the "Non-Compete Provision"):

> For a period of twelve (12) months after this Agreement has been terminated for any reason, with or without cause, or for a period of time equal to the length of Employee's employment with Company if such tenure is less than twelve (12) months, Employee will not enter into or engage in the automotive parts business, the key machine or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof either as an individual or his/her own account or as a partner of joint venture, or as an employee, agent, independent contractor, or salesman for any person, firm, association or corporation, or as an officer or director of a corporation which competes with the business of this Company within any territory to which Employee was assigned within six (6) months prior to the termination of this Agreement.

Id. at 38–39.  The Employment Agreement contains a "Governing Law" provision, which states that the Agreement "shall be subject to and governed by the substantive laws of the State of New Jersey."  Id. at 41.

During his employment, Defendant was assigned to multiple territories in Georgia, including Cobb, Forsyth, Fulton and Gwinnett counties.  Id. at 10. Plaintiff alleges that Defendant developed many customer relationships, built expertise in the field and gained "considerable knowledge of his assigned territories."  Id.  Plaintiff also asserts that Defendant "was intimately familiar with [Plaintiff's] business strategy within [Defendant's] assigned territories, including but not limited to [Plaintiff's] customers and customer preferences and

relationships; agreements and pricing; business initiatives; competitive advantages and disadvantages; and approaches to new markets and customers." Id. at 6.

Defendant ended his employment with Plaintiff on March 31, 2021. Id. at 14. Plaintiff alleges that Defendant began employment with Winzer as a Sales Representative shortly after this date, in a purported violation of the Non-Compete Provision. Id. at 14–15. According to the Complaint, Defendant has successfully solicited Plaintiff's current and former customers, allegedly violating the Non-Solicitation Provision. Id. at 10.

Plaintiff sent Defendant a cease and desist letter on May 17, 2021, regarding Defendant's employment with Winzer and reminding Defendant of the restrictive covenants in the Employment Agreement. Id. at 16–17. At some point thereafter, Plaintiff sent Winzer a cease and desist letter in which Plaintiff "demanded that Winzer cease its interference with [Defendant's] post-employment obligations to [Plaintiff] and demanded that [Defendant] abide by [the] Employment Agreement." Id. at 17. Plaintiff sent Winzer another cease and desist letter on September 1, 2021, demanding that Winzer "immediately refrain from tortiously interfering" with Plaintiff's agreements with its former employees and that it cease and desist any efforts "to solicit, engage or poach" Plaintiff's current or former

employees.[2]  Id.  Winzer responded to Plaintiff on September 7, 2021, denying all allegations.  Id.

On November 9, 2021, Plaintiff filed a complaint in the District of New Jersey against Defendant and three other former employees who allegedly violated their employment agreements.  Id. at 17–18.  Defendant moved to dismiss the case for lack of personal jurisdiction, and the case was administratively closed from December 2021 until March 2022 while the parties engaged in settlement negotiations.  Id. at 18.  When those discussions proved unsuccessful, Plaintiff voluntarily dismissed that case.  Id. at 18.

Plaintiff filed suit in this Court on March 25, 2022.  Id. at 1.  Plaintiff brings the following claims against Defendant:  count I, breach of contract/breach of employment agreement; count II, tortious interference with existing and prospective business advantage; count III, unjust enrichment; count IV, quantum meruit; and count V, request for injunction.[3]  Id. at 21–29.  Plaintiff seeks

---

[2] Plaintiff attached the cease and desist correspondence as exhibits to the Complaint.  See [Doc. 1, pp. 44–55].  The September 1, 2021 letter references Defendant as well as three other individuals who are presumably also Plaintiff's former employees.  See id. at 51. As previously noted, Winzer is not a party to this lawsuit, and neither are the other individuals named in this letter.

[3] Plaintiff named a variety of Doe entities and individuals as defendants in this case. Those defendants are not referenced in the Complaint beyond being named in the caption. Because fictitious-party pleading is generally not permitted, the Court does not address

preliminary injunctive relief in addition to damages and punitive damages.  Id.

Defendant moved to dismiss the action on June 1, 2022, on the grounds that

Plaintiff's Complaint fails to state a claim to relief.  [Doc. 8].  The Motion is ripe

for review.[4]

## ANALYSIS

### A.    Legal Standard

"At the motion to dismiss stage, all well-pleaded facts are accepted as true,

and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir.

1999).  In determining whether this action should be dismissed for failure to state a

claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must

contain "a short and plain statement of the claim showing that the pleader is

entitled to relief."  Although detailed factual allegations are not necessarily

---

these unidentified defendants in any further detail.  See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010); see also Smith v. Comcast Corp., 786 F. App'x 935, 939 (11th Cir. 2019) ("Our caselaw generally forbids fictitious-party pleading—that is, claims against fictitious or non-existent parties are usually dismissed.").

[4] Plaintiff's response to the Motion to Dismiss failed to comply with the Local Rules of this Court.  It was formatted incorrectly, and it exceeded the page limit by ten pages.  See N.D. Ga. Civ. R. 5.1(C)(2) (requiring all filings to be double-spaced); N.D. Ga. Civ. R. 7.1(D) (imposing a page limit of twenty-five pages on response briefs).  Although the Court has discretion to decline to consider any brief that fails to comply with the Local Rules, see N.D. Ga. Civ. R. 7.1(F), the Court considered Plaintiff's response nonetheless.

required, the pleading must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

As a threshold matter, the parties dispute which body of law applies to the Employment Agreement.  The Court resolves this choice-of-law issue before turning to the resolution of the Motion to Dismiss.

**B.    Choice of Law**

The Employment Agreement provides that it "shall be subject to and governed by the substantive laws of the State of New Jersey."  [Doc. 1, p. 41]. Plaintiff argues that New Jersey law applies to its claims concerning the Employment Agreement.  Defendant counters that Georgia courts do not enforce choice-of-law provisions where doing so would contravene Georgia public policy. Here, according to Defendant, the Employment Agreement is unenforceable under Georgia law, and thus the Agreement's choice-of-law provision should not be enforced.

"The law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state." Nasco, Inc. v. Gimbert, 238 S.E.2d 368, 369 (Ga. 1977); see, e.g., Hulcher Servs., Inc. v. R.J. Corman R.R. Co., 543 S.E.2d 461, 465 (Ga. Ct. App. 2000) ("Georgia conflicts of law will not follow a contractual selection of law of a foreign state where such chosen law would contravene the public policy of Georgia against certain unlawful covenants not to compete."). The validity of restrictive covenants are "determined by the public policy" of Georgia.[5] Nasco, 238 S.E.2d at

---

[5] Plaintiff urges this Court to apply the choice-of-law analysis set forth in the Restatement (Second) of Conflict of Laws § 187(2), relying on Nordson Corp. v. Plasschaert, 674 F.2d 1371 (11th Cir. 1982), as support for adhering to § 187(2), see [Doc. 10, pp. 14–17]. The Supreme Court of Georgia expressly disapproved of this approach in Convergys Corp. v. Keener, 582 S.E.2d 84 (Ga. 2003). In Convergys, the Supreme Court of Georgia answered a question certified by the Eleventh Circuit Court of Appeals: in short, must a court applying Georgia conflict-of-law principles follow the language of § 187(2) "before it elects to apply Georgia law to invalidate a non-compete agreement as contrary to Georgia public policy"? Id. at 85. The court answered in the negative. Id. In its analysis, the Convergys court relied on Nasco, a case that addressed a nearly identical issue and articulated the principle that Georgia courts would not enforce contracts that are contrary to the state's public policy. Id. at 85–86; see Nasco, 238 S.E.2d at 369 ("Covenants against disclosure, like covenants against competition, affect the interests of this state . . . , and hence their validity is determined by the public policy of this state."). In Nordson, the Eleventh Circuit applied § 187(2) to uphold the parties' choice of Ohio law. 674 F.2d at 1374–75. In Convergys, however, the court clarified that "Nordson erroneously interpreted Nasco and is in direct conflict with that case" and reaffirmed that "Georgia will continue to adhere to the traditional conflicts of law rules." 582 S.E.2d at 87. This clear precedent forecloses any argument that § 187(2) necessarily informs the Court's analysis in this case.

369.  In turn, "[t]he public policy of Georgia is that contracts in restraint of trade are prohibited."  Hostetler v. Answerthink, Inc., 599 S.E.2d 271, 274 (Ga. Ct. App. 2004).

To determine whether New Jersey or Georgia law applies, then, the Court must ascertain whether enforcing the Employment Agreement would be contrary to the public policy of Georgia.  More specifically, the Court must assess whether the Employment Agreement's restrictive covenants are enforceable under Georgia law.

The Georgia Restrictive Covenants Act became effective on May 11, 2011, and provides a statutory framework for the enforceability of restrictive covenants. See O.C.G.A. § 13-8-50 et seq.  However, "[c]ontracts entered into before May 11, 2011, must be analyzed under the law of restrictive covenants as it existed before that date."  Fortress Inv. Grp., LLC v. Holsinger, 841 S.E.2d 55, 61 (Ga. Ct. App. 2020).  Defendant signed the Employment Agreement on March 3, 2008.  [Doc. 1, p. 10].  Therefore, the Court must assess the Agreement's enforceability under Georgia law prior to the passage of the Restrictive Covenants Act.[6]

---

[6] In the response to the Motion to Dismiss, Plaintiff asserts that it should be permitted to amend the Complaint as a matter of right under O.C.G.A. § 9-11-15.  [Doc. 10, p. 33]. As a threshold matter, the Federal Rules of Civil Procedure govern this case, not Georgia's Civil Practice Act.  The procedure for amendment in O.C.G.A. § 9-11-15 is therefore inapposite.  That aside, "[a] complaint may not be amended by briefs in

"Restrictive covenants that are ancillary to an employment contract are subject to strict scrutiny and will be voided by Georgia courts if they impose an unreasonable restraint on trade." Stultz v. Safety & Compliance Mgmt., Inc., 648 S.E.2d 129, 131 (Ga. Ct. App. 2007).  A court may enforce a restrictive covenant only if "(1) the restraint is reasonable; (2) founded upon valuable consideration; (3) is reasonably necessary to protect the party in whose favor it is imposed; and (4) does not unduly prejudice the interests of the public." Hostetler, 599 S.E.2d at 274.  "Such restrictions must be strictly limited as to time, territorial effect, capacity in which the employee is prohibited from competing, and as to overall reasonableness." Id.  "The validity and enforceability of restrictive covenants limiting competition is a question of law." Id.; see also Trujillo v. Great S. Equip. Sales, LLC, 657 S.E.2d 581, 583 (Ga. Ct. App. 2008) ("Whether the restraint

---

opposition to a motion to dismiss." Gibbons v. McBride, 124 F. Supp. 3d 1342, 1381 (S.D. Ga. 2015); cf. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Here and elsewhere in the response brief, Plaintiff references new facts that are entirely absent from the Complaint, primarily to support its arguments that New Jersey law should apply and that, if the Court applies Georgia law, the applicable body of law is that of post-2011. See, e.g., [Doc. 10, p. 13].  Plaintiff, however, has not sought to amend the Complaint, and the Court may not consider facts outside the pleadings on a motion to dismiss. Dorman v. Aronofsky, 36 F.4th 1306, 1317 (11th Cir. 2022) ("[F]acts contained in a motion or brief 'cannot substitute for missing allegations in the complaint.'" (quoting EEOC v. Catastrophe Mgmt. Sols., 852 F.3d 1018, 1030 n.5 (11th Cir. 2016))).  Consequently, the Court disregards any and all new facts asserted in the response to the Motion to Dismiss.

imposed by the employment contract is reasonable is a question of law for determination by the court." (quoting W.R. Grace & Co., Dearborn Div. v. Mouyal, 422 S.E.2d 529, 531 (Ga. 1992))).  Finally, "[b]ecause Georgia does not utilize the 'blue pencil' doctrine of severability in this context, if any portion of the restrictive covenant is found unreasonable, 'the entire covenant must fall.'"  Stultz, 628 S.E.2d at 131 (quoting Uni-Worth Enters., Inc. v. Wilson, 261 S.E.2d 572, 575 (Ga. 1979)).

The Court will begin by determining whether the Non-Compete Provision is enforceable.  "To determine the reasonableness of a restrictive covenant, courts examine the covenant's terms regarding time, territory, and scope of activity." Hulcher Servs., 543 S.E.2d at 466.  The Non-Compete Provision appears reasonably limited as to time (twelve months after the termination of employment) and territory ("within any territory to which Employee was assigned").  [Doc. 1, p. 39].  The Non-Compete Provision's restriction as to scope of activity, however, is a different story.  In relevant part, the provision contains the following restriction:

> Employee will not enter into or engage in the automotive parts business, the key machine or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof either as an individual or his/her own account or as a partner of joint venture, *or as an employee, agent, independent contractor, or salesman* for any person, firm, association or corporation, or as an officer or director of a corporation which competes with the business of this Company . . . .

Id. at 38–39 (emphasis added).  This language, particularly the italicized portion,

prevents Defendant from working for one of Plaintiff's competitors in *any*

capacity, whether he is employed as a salesman (as he was for Plaintiff) or in an

entirely different role.[7]  A restriction this broad is not permitted under Georgia law:

> The Georgia courts have found that a former employer does not need
> a restrictive covenant that prohibits work for a competitor in any
> capacity in order to protect its legitimate interests, because a
> reasonable restriction sets forth with specific particularity those
> activities related to the employer's business in which the employee
> was trained by the employer or worked for the employer, thereby
> protecting the employer's interests from competition in that regard
> only.

Hulcher Servs., 543 S.E.2d at 467; see also Howard Schultz & Assocs. of the Se.,

Inc. v. Broniec, 236 S.E.2d 265, 268 (Ga. 1977) ("This court has held on several

occasions that a covenant wherein the employee agreed not to accept employment

with a competitor 'in any capacity' imposes a greater limitation upon the employee

than is necessary for the protection of the employer and therefore is

---

[7] The language of a restrictive covenant need not contain the precise words "in any capacity" to impose such a restriction in practice.  The Georgia Court of Appeals has held that "[a] non-compete covenant is too broad and indefinite to be enforceable where it contains no limit on the work restricted and *effectively* prohibits an employee from working for a competitor in any capacity."  Lapolla Indus., Inc. v. Hess, 750 S.E.2d 467, 474 (Ga. Ct. App. 2013) (emphasis added); see also id. (finding that a noncompete provision without the specific phrase "in any capacity" was overly broad and noting that the provision impermissibly "prohibited activities beyond the scope of those performed for [the employer] by its former employees").

unenforceable."). Georgia courts have declined to enforce restrictive covenants with language similar to that here—i.e., that prohibits an employee from accepting employment of any kind with competitors.[8] In Ken's Stereo–Video Junction, Inc. v. Plotner, for example, the restrictive covenant contained the following terms:

> Employee agrees . . . that he will not either directly or indirectly on his own behalf or as partner, officer, employee, shareholder, or director of any person or entity, engage in or otherwise be interested in any business which consists of the sale and/or installation of consumer electronics (defined as audio, video, and car stereo) . . . .

560 S.E.2d 708, 709 (Ga. Ct. App. 2002). The Georgia Court of Appeals held that it was "hard to imagine a broader restriction on the scope of prohibited activity" because, "[f]or instance, although Plotner worked only as a car stereo and security system installer and manager for Ken's Stereo, the noncompete clause would prevent him from working for another company in any capacity, even in positions

---

[8] See, e.g., Uni-Worth Enters., Inc. v. Wilson, 261 S.E.2d 572, 575 (Ga. 1979) (holding that a restrictive covenant was "invalid not only because it prohibits the employee from entering into a business competitive with the employer, but also because it prohibits the employee from entering into any such business 'as sole proprietor, partner, officer, or employee'"); Russell Daniel Irrigation Co. v. Coram, 516 S.E.2d 804, 806 (Ga. Ct. App. 1999) ("This covenant is unenforceable because it purports to prevent [the defendant] from obtaining employment with any competitor in any capacity."); Glob. Link Logistics, Inc. v. Briles, 674 S.E.2d 52, 55 (Ga. Ct. App. 2009) (finding a noncompete covenant to be overbroad and unenforceable where it barred the defendant from "engag[ing] (whether as an owner, operator, manager, employee, officer, director, consultant, advisor, representative *or otherwise*), *directly or indirectly*, in any Competitive Business" and also barred the defendant from soliciting "all Global Link customers as well as employees" (alteration in original)).

totally unrelated to car stereo installation."  Id. at 709–10.  That reasoning applies here.  Defendant worked for Plaintiff as a Sales Representative, but under the terms of the Non-Compete Provision, he cannot work for a competitor in any capacity— i.e., "as an employee, agent, independent contractor, or salesman," [Doc. 1, pp. 38– 39]—"even in positions totally unrelated to [sales]," 560 S.E.2d at 710.  The Court thus finds that the Non-Compete Provision is overly broad as to the scope of restricted activity.

Plaintiff's arguments do not convince this Court that any other outcome is appropriate.  In the response to the Motion to Dismiss, Plaintiff quotes the Non-Compete Provision in the following manner:

> For a period of twelve (12) months after this Agreement has been terminated . . . Employee will not enter into or engage in the automotive parts business, the key machine or key blank business, the industrial fastener and industrial maintenance products business . . . which competes with the business of this Company *within any territory to which Employee was assigned within six (6) months prior to the termination of this Agreement*.

[Doc. 10, p. 23] (alterations in original).  Tellingly, this excerpt omits the very language that defines the restricted scope of activity:  "or any branch thereof either as an individual or his/her own account or as a partner of joint venture, or as an employee, agent, independent contractor, or salesman for any person, firm, association or corporation, or as an officer or director of a corporation."  [Doc. 1,

pp. 38–39].  Plaintiff argues that the Non-Compete Provision is reasonable because it "is expressed with particularity and relates to the same activities that [Defendant] was engaged [in] while employed by [Plaintiff]."  [Doc. 10, p. 23].  Certainly, the Non-Compete Provision—as edited by Plaintiff—does relate to the same activities with which Defendant was engaged during his employment with Plaintiff; it limits Defendant from entering into specific businesses in certain industries that compete with Plaintiff.  But the Non-Compete Provision as edited by Plaintiff is, of course, not the actual Non-Compete Provision that is contained in the Employment Agreement.  The actual Non-Compete Provision remains overbroad and unenforceable.

In sum, the Non-Compete Provision would be unenforceable under Georgia law because it is unreasonable as to the scope of restricted activity.  Wolff v. Protege Sys., Inc., 506 S.E.2d 429, 432 (Ga. Ct. App. 1998) ("[T]his covenant is unenforceable because it purports to prevent [the employee] from obtaining employment with any competitor in any capacity.  Such a restriction has repeatedly been held to be overbroad, unreasonable, and prohibited by the Georgia Constitution.").  Because Georgia law prior to 2011 did not permit severability, this finding as to the Non-Compete Provision means that the Non-Solicitation Provision fails too, and the Court is unable to blue-pencil either provision to render

them enforceable.  Wilson, 261 S.E.2d at 575 (noting that because the Georgia

Supreme Court "has rejected the 'blue-pencil theory of severability' as applied to

restrictive covenants in employment contracts," if any part of a restrictive covenant

is invalid, "the entire covenant must fall" (quoting Broniec, 236 S.E.2d at 269)).

Because the restrictive covenants in the Employment Agreement would be

contrary to the public policy of Georgia, the Court cannot enforce the parties'

designation of New Jersey law.[9]  Having determined that Georgia law, not New

Jersey law, controls Plaintiff's claims concerning the Employment Agreement, the

Court now turns to the Motion to Dismiss.

---

[9] In New Jersey, "[a] post-employment restrictive covenant is enforceable if the terms of the covenant are reasonable in light of the totality of the circumstances."  Nat'l Reprographics, Inc. v. Strom, 621 F. Supp. 2d 204, 222 (D.N.J. 2009).  Evaluating the reasonableness of a restrictive covenant under "the totality of the circumstances" is a more relaxed standard than the strict scrutiny employed by Georgia courts.  See, e.g., Davidson Bros. v. D. Katz & Sons, Inc., 579 A.2d 288, 296 (N.J. 1990) (holding that a restrictive covenant is generally reasonable and enforceable if it "simply protects the legitimate interests of the employer[,] imposes no undue hardship on the employee, and is not injurious to the public" (quoting Solari Indus., Inc. v. Malady, 264 A.2d 53, 56 (N.J. 1970)).  As such, the Employment Agreement would likely be enforceable, or at least partially enforceable, under New Jersey law.  See id. ("[I]f such a covenant is found to be overbroad, it may be partially enforced to the extent reasonable under the circumstances."); see also, e.g., Earthcam, Inc. v. Oxblue Corp., No. 1:11-cv-2278, 2013 WL 11904713, at *7 n.8 (N.D. Ga. July 18, 2013) (comparing New Jersey law and pre-2011 Georgia law on the enforcement of non-solicitation agreements and finding that Georgia courts would not enforce an agreement that New Jersey courts likely would).

**C.      Motion to Dismiss**

The Court will discuss Plaintiff's claims, and whether they are subject to dismissal, in turn:  (1) breach of contract/breach of employment agreement; (2) tortious interference with existing and prospective business advantage; (3) unjust enrichment and quantum meruit; and (4) injunctive relief.

1.      *Breach of Contract/Breach of Employment Agreement*

Plaintiff alleges that Defendant "breached and continues to breach the express terms of the . . . Employment Agreement."  [Doc. 1, p. 22].  The Court determined above that the restrictive covenants in the Agreement are unenforceable as a matter of law, and these provisions—the alleged breach of which form the basis of this claim—cannot be severed from the Employment Agreement.  Because "[t]here can be no breach of an unenforceable contract," Moore v. BellSouth Mobility, Inc., 534 S.E.2d 133, 136 (Ga. Ct. App. 2000), the breach of contract claim is **DISMISSED**.

2.      *Tortious Interference with Existing and Prospective Business Advantage*

Plaintiff brings a claim for "tortious interference with existing and prospective business relations."  [Doc. 1, p. 23].  The allegations within this count refer to Plaintiff's "existing and prospective economic and contractual relationships with its customers and accounts."  Id.  Although it is unclear from the

face of the Complaint, the Court will assume that Plaintiff intended to bring a

claim for both tortious interference with business relations *and* tortious

interference with contractual relations and will assess this count accordingly.

> Under Georgia law,
>
> [t]he elements of tortious interference with contractual relations, business relations, or potential business relations are:  (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Dalton Diversified, Inc. v. AmSouth Bank, 605 S.E.2d 892, 897–98 (Ga. Ct. App.

2004) (quoting Blakey v. Victory Equip. Sales, Inc., 576 S.E.2d 288, 292 (Ga. Ct.

App. 2002)).

In the Complaint, Plaintiff alleges that Defendant intended to harm Plaintiff

"by interfering with its existing and prospective economic and contractual

relationships and preventing such relationships from continuing or occurring."

[Doc. 1, p. 23].  Plaintiff asserts that "Defendant engaged in this tortious conduct

in the absence of privilege, justification or excuse" and that his actions "caused and

will continue to cause [Plaintiff] actual, immediate and irreparable harm."  Id. at

23, 24.  Plaintiff alleges broadly that Defendant, in the course of his employment

with Winzer, solicited Plaintiff's "current and former customers" and "successfully sold to them various supplies for the benefit of himself and Winzer, in direct violation of his . . . Employment Agreement." Id. at 10.

Plaintiff's allegations for this count rely on conclusory assertions that mirror the elements of the claim rather than on particularized facts. Franklin v. Curry, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013) ("[W]e afford no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action."); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims.").

That aside, Plaintiff neglected to explain how Defendant's actions constitute the kind of conduct contemplated by a claim for tortious interference with business or contractual relations. The first element of this claim is that a defendant acted improperly and without privilege. "In this context, improper conduct means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." Gordon Document Prods., Inc. v. Serv. Techs., Inc., 708 S.E.2d 48, 53 (Ga. Ct. App. 2011) (quoting Disaster

<u>Servs., Inc. v. ERC P'ship</u>, 492 S.E.2d 526, 529 (Ga. Ct. App. 1997)).  The

Complaint does not contain any allegations that Defendant engaged in improper

conduct of this nature.[10]  Ultimately, Georgia courts have recognized that "[f]air

competition is always legal, and absent a valid noncompete or nonsolicit covenant

a former employee may go to customers whom he procured for the old employer

and endeavor to persuade them to change their trade to his advantage."  <u>Tom's</u>

<u>Amusement Co. v. Total Vending Servs.</u>, 533 S.E.2d 413, 418 (Ga. Ct. App.

2000).  The Court previously determined that the restrictive covenants in this case

are not valid.  Without an enforceable restrictive covenant, Defendant did not act

improperly or without privilege by soliciting Plaintiff's former customers.

Because Plaintiff failed to allege sufficient facts to state a claim for tortious

interference with existing or prospective business relations, this claim is

**DISMISSED**.

---

[10] Plaintiff alleges that Defendant had access to confidential information during his
employment, such as Plaintiff's customer list, and asserts that Defendant has "actively
reach[ed] out to the customers with whom he worked with while at [Plaintiff] since
separating from [Plaintiff] and beginning employment with Winzer."  [Doc. 1, p. 14].
Plaintiff does not, though, allege that Plaintiff somehow misappropriated confidential
information in this process.  Moreover, the Georgia Court of Appeals has held that
"customer lists are not confidential information, and an employee is permitted to solicit
his former customers on behalf of a new employer."  <u>Contractors' Bldg. Supply, Inc. v.
Gwinnett Sash & Door, Inc.</u>, 403 S.E.2d 844, 846 (Ga. Ct. App. 1991), <u>overruled on
other grounds as recognized in</u> <u>Seckinger v. Holtzendorf</u>, 409 S.E.2d 76, 77 (Ga. Ct. App.
1991)).

3.  *Unjust Enrichment and Quantum Meruit*

Unjust enrichment and quantum meruit, while separate doctrines, allow a plaintiff to recover on a theory that the defendant owes a duty to pay that arises from the receipt of a benefit.  Watson v. Sierra Contracting Corp., 485 S.E.2d 563, 570 (Ga. Ct. App. 1997); see also Zampatti v. Tradebank Int'l Franchising Corp., 508 S.E.2d 750, 757 (Ga. Ct. App. 1998) ("The measure of damages under quantum meruit or unjust enrichment is based upon the benefit conferred upon the defendant and not upon the cost to render the service or cost of the goods."). Importantly, "[n]either theory of recovery is available when an express contract exists governing all the claimed rights and responsibilities of the parties." Davidson v. Maraj, 609 F. App'x 994, 997 (11th Cir. 2015).

In this case, Plaintiff explicitly premised both the claim for unjust enrichment and the claim for quantum meruit on Defendant's purported breach of the Employment Agreement.  As to the claim for unjust enrichment, Plaintiff asserts that "Defendant was enriched by his unlawful behavior when he accepted employment by Winzer and received the associated compensation and benefits, and continue[s] to get enriched, in violation of his post-employment restrictive covenant."  [Doc. 1, p. 25].  Similarly, Plaintiff seeks to recover on a theory of quantum meruit by alleging that "[i]t would be unjust, unfair, and inequitable for

Defendant to retain the benefit gained from his failure to fulfill and honor his agreed-upon obligations under the parties' Employment Agreement." Id. at 27.  As a matter of pleading, these claims "fail for the simple reason that recovery under neither quantum meruit nor unjust enrichment is authorized where, as here, the claims are based on an express contract." Am. Teleconferencing Servs., Ltd. v. Network Billing Sys., LLC, 668 S.E.2d 259, 263 (Ga. Ct. App. 2008).

Additionally, although the Court concluded above that the Employment Agreement is unenforceable, Plaintiff did not plead either claim in the alternative. Amin v. Mercedes-Benz USA, LLC, 301 F. Supp. 3d 1277, 1296 (N.D. Ga. 2018) ("While a party, indeed, cannot *recover* under both a breach of contract and unjust enrichment theory, a plaintiff may plead these claims in the alternative." (quoting Clark v. Aaron's, Inc., 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012))).  Plaintiff counters that "this [issue] can easily be cured by amending the . . . Complaint." [Doc. 10, p. 31].  Yet Plaintiff has not sought to amend the Complaint, see supra note 6, and this Court cannot redraft the pleading to sustain a cause of action. Plaintiff's reliance on an express contract for the unjust enrichment and quantum meruit claims and the failure to plead these claims in the alternative justify their dismissal.  See, e.g., Longo v. Campus Advantage, Inc., 588 F. Supp. 3d 1286, 1298 (M.D. Fla. 2022) ("Because Plaintiffs failed to plead their unjust enrichment

claim in the alternative and failed to allege the lease contracts are invalid, the Court also dismisses Plaintiffs' unjust enrichment claim."). Accordingly, the claims for unjust enrichment and quantum meruit are **DISMISSED**.

        4.    *Injunctive Relief*

A plaintiff seeking preliminary injunctive relief must show (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) that the balance of equities is in his favor; and (4) that an injunction would not be adverse to the public interest. Sofarelli v. Pinellas County, 931 F.2d 718, 723–24 (11th Cir. 1991). The Court determined above that Plaintiff failed to state a claim for breach of contract, tortious interference with business or contractual relations, quantum meruit or unjust enrichment. Plaintiff thus failed to establish the first element for a preliminary injunction—a substantial likelihood of success on the merits—as to any of its claims. Because a preliminary injunction "is an extraordinary and drastic remedy," the Court may not issue such relief "unless the movant clearly establish[es] the burden of persuasion as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal punctuation omitted) (quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)). Because Plaintiff failed to show the first factor, injunctive relief is not warranted. This claim is thus **DISMISSED**.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss for Failure to State a

Claim [Doc. 8] is **GRANTED**.  The Complaint is **DISMISSED WITH**

**PREJUDICE**.[11]  The Clerk is **DIRECTED** to close the case.

SO ORDERED this 28th day of February, 2023.

J. P. BOULEE
United States District Judge

---

[11] "The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"  Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981).  Therefore, such dismissals are with prejudice.  See Woodson v. Eleventh Jud. Cir. in & for Mia. Dade Cnty., 791 F. App'x 116, 119 (11th Cir. 2019).